In the Matter of the WELFARE
OF C.M.K.

No. C8–96–441.

Court of Appeals of Minnesota.

Sept. 3, 1996.

Robert MacDonald, Prasanta K. Reddy, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Appellants Thomas and Wendy Wile.

David L. Lillehaug, United States Attorney, Friedrich A.P. Siekert, Assistant U.S. Attorney, Minneapolis, for Respondent United States.

Michael O. Freeman, Hennepin County Attorney, Andrew J. Mitchell, Assistant County Attorney, Minneapolis, for Respondent Hennepin County.

Rich Soli, INS Service, Bloomington, for Respondent Immigration and Naturalization Service.

Considered and decided by AMUNDSON, P.J., and NORTON and PETERSON, JJ.

## OPINION

NORTON, Judge.

Foster parents of C.M.K., an illegal alien who is in deportation proceedings, appeal from a juvenile court order denying their motion for an order to permit their private attorney to file a petition to find that C.M.K is a "child in need of protection or services" as defined in Minn.Stat. § 260.015 (1994). We affirm.

## FACTS

C.M.K. was born in the People's Republic of China on May 3, 1978. In an affidavit, C.M.K. testified that approximately eight or nine years ago his father took over the lease of the village fish farm and eventually turned it into a profitable venture. Once the fish farm became successful, the village head forcibly divided the business between C.M.K.'s father and several of the village head's relatives. C.M.K.'s father continued to manage the farm, but the profits were shared with relatives of the village head, none of whom worked on the farm.

In 1992, C.M.K. witnessed the savage beating of his father by relatives of the village

head, resulting in his father being hospitalized for two months and no longer being able to run the fish farm as efficiently as he had prior to being injured. C.M.K., who had been working on the fish farm, was concerned that the village head and local government officials would eventually harass and torture him, as they had his father.

C.M.K. left his village on January 1, 1994, and met with smugglers to pursue an opportunity to travel to the United States. He arrived in the United States on or about March 20, 1994 and traveled by refrigerated truck to a home. The smugglers severely beat C.M.K. several times, because he was unable to pay them the $26,000 they were demanding. At some point, the smugglers moved C.M.K. and several other young men to an apartment in New York City. Officials of respondent United States Immigration and Naturalization Service (INS) raided the apartment and arrested C.M.K.

Because C.M.K. was a juvenile and did not have a parent, legal guardian, or adult relative in the United States, the INS could not release him from custody. Pursuant to an agreement between the United States government, acting through the Department of Justice Community Relation Services (CRS), and the Lutheran Immigration and Refugee Services (LIRS), the INS transferred physical custody of C.M.K. to Lutheran Social Services of Minnesota (LSSM). LSSM placed C.M.K. in the foster home of Thomas and Wendy Wile, appellants in this case. The INS has retained legal custody of C.M.K. since his apprehension.

The INS served C.M.K. with an order to show cause on April 6, 1994, charging him with deportability as an impending immigrant not in possession of a valid immigrant visa. Following several preliminary hearings and a merits hearing, the immigration court found C.M.K. deportable and denied him political asylum on March 6, 1995. C.M.K. appealed this order to the Board of Immigration Appeals (BIA), which remanded the case

on September 11, 1995, because of deficiencies in the transcript.

In October 1995, the Wiles filed a motion in Hennepin County Juvenile Court to allow their private attorney to file a petition seeking juvenile court jurisdiction of C.M.K.'s custody and a finding that C.M.K. is in need of long-term foster care, which would permit C.M.K. to obtain a Special Immigration Juvenile Status in the deportation proceeding. Respondent Hennepin County joined the INS in opposition to the Wiles' motion. After a hearing, the juvenile court issued an order ruling that it had no jurisdiction to proceed. The Wiles appeal.

## ISSUE

Did the juvenile court properly determine that it lacked jurisdiction to find a juvenile alien in need of protection or services under chapter 260 where the juvenile is in the legal custody of the INS and is involved in deportation proceedings?

## ANALYSIS

The federal immigration laws and regulations permit a juvenile to apply for Special Immigrant Juvenile Status pursuant to 8 U.S.C.A. § 1101(a)(27)(J) (West Supp.1996) and 8 C.F.R. § 204.11 (1995). The juvenile may be classified as a special immigrant if, among other things, he or she

> has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care * * *.

8 U.S.C.A. § 1101(a)(27)(J). The juvenile is eligible for this classification if he or she "[c]ontinues to be dependent upon the juvenile court and eligible for long-term foster care, such declaration, dependency or eligibility not having been vacated, terminated, or otherwise ended." 8 C.F.R. § 204.11(c)(5).[1]

---

1. Since this appeal was filed, C.M.K. has turned 18 years old. Respondents urge this court to dismiss the appeal as being moot because C.M.K. is no longer a "child" as defined in the Juvenile Court Act. See Minn.Stat. § 260.015, subd. 2

(defining "child" as "an individual under 18 years of age"). The Wiles contend that juvenile court jurisdiction may extend to age 19. See Minn.Stat. § 260.181, subd. 4 (1994) (providing for extension of jurisdiction to age 19 under

Here, the juvenile court declined to exercise jurisdiction because C.M.K. was already in the legal custody of the INS and was in deportation proceedings before the Wiles sought leave to file a petition in state court. The juvenile court determined that, under the circumstances here, federal immigration proceedings preempted state court proceedings and, therefore, the state court was without jurisdiction to find C.M.K. dependent. We agree. *See Hines v. Davidowitz*, 312 U.S. 52, 62–63, 61 S.Ct. 399, 402, 85 L.Ed. 581 (1941) ("[w]hen the national government by treaty or statute has established rules and regulations touching the rights, privileges, obligations or burdens of aliens as such, the treaty or statute is the supreme law of the land").

The factual and statutory bases on which the Wiles allege C.M.K. is in need of state court protection or services demonstrate that state court action here would be in direct conflict with the deportation proceedings.

First, C.M.K. is not a child who "is abandoned or without parent, guardian or custodian." Minn.Stat. § 260.015, subd. 2a(1) (1994). The INS, as the legal custodian of C.M.K., and the Wiles, as his physical custodians, fill this role.[2] Further, C.M.K.'s parents did not abandon him; rather, he left his home of his own accord. The petition contains no allegation that the INS is not adequately performing its duties as legal custodian. Certainly the INS has not abandoned C.M.K. The record contains no facts from which a court could find C.M.K. in need of

protection or services under section 260.015, subdivision 2a(1).

Second, the petition alleges C.M.K. is a child in need of protection or services because he "has been a victim of physical abuse at the hands of the smugglers who smuggled him into the United States." The Wiles claim that this fact satisfies section 260.015, subdivision 2a(2), establishing a need for protection or services when a child "has been a victim of physical * * * abuse." Significantly, the Wiles do not allege that C.M.K. has been harmed in any manner since the INS officials apprehended him. As the juvenile court noted, the fact that C.M.K. may have been subjected to physical abuse by smugglers prior to the INS's knowledge of his illegal entry does not demonstrate that C.M.K. is presently in need of protection or services. The alleged fact that C.M.K. may be abused if he is deported is an issue for his asylum claim in the deportation proceedings, not an issue for state juvenile court, because such a state court decision would, as the juvenile court determined here, conflict with and circumvent the immigration process. *See Hines*, 312 U.S. at 62–63, 68, 61 S.Ct. at 402, 405 (federal immigration law preempts state law that interferes with the admission or exclusion of aliens, an issue that is exclusively federal).

Third, the petition alleges that C.M.K. "is without necessary food, clothing, shelter, education, or other required care." Minn.Stat. § 260.015, subd. 2a(3). The Wiles claim that C.M.K. satisfies this statutory requirement because his parents are unable to provide for

certain circumstances). We decline to decide whether jurisdiction may extend to age 19 in CHIPS cases, because the question of extended jurisdiction was not before the juvenile court and because the juvenile court decided it lacked jurisdiction here on other grounds that the parties have fully briefed and litigated. *See In re Welfare of L.J.S.*, 539 N.W.2d 408, 412 n. 1 (Minn.App. 1995) (declining to dismiss case for possible mootness after L.J.S. had reached plea agreement since appeal was filed, because certified question for appeal was "fully briefed and was adequately litigated in the trial court"), *review denied* (Minn. Jan. 25, 1996).

**2.** The Wiles are C.M.K.'s foster parents pursuant to an arrangement between the U.S. government, CRS, LIRS, and LSSM, but legal custody of C.M.K. remains with the INS. *See Reno v. Flores*,

507 U.S. 292, 297–303, 113 S.Ct. 1439, 1445–47, 123 L.Ed.2d 1 (1993) (juveniles detained and placed in facilities that meet state licensing requirements for provision of shelter and services for dependent children are in the "legal custody" of the INS). The placement agreement reflects this custodial arrangement, stating that unaccompanied minors, "although released to the physical custody of the CRS, remain in the legal custody of the INS." Agreement at § 1.1(a)-(b). The INS is obligated under the agreement to reimburse CRS for expenses incurred during the period of custody. Agreement at § 4.1(a) and § 5.5. CRS reimburses LIRS; LIRS local affiliates reimburse the foster parents, such as the Wiles are here. The Wiles have not contested the fact that C.M.K. is in the legal custody of the INS.

him and they fear for his safety should he be returned to China. But the statute does not require that only the child's parents provide this care, the child's legal guardian or custodian may also fulfill this responsibility. *Id.* Here, the INS and the Wiles provide these basic needs. The Wiles appear to be requesting that the state court intercede and prohibit the INS, C.M.K.'s legal custodian, from deporting him to a situation which would allegedly not meet C.M.K.'s basic needs as defined by state law. Again, this matter is directly related to the issue of asylum, an issue that is not subject to state court jurisdiction. *See Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (recognizing " 'the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control' " *quoting Shaughnessy v. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953)); *Hines,* 312 U.S. at 67, 61 S.Ct. at 404 (federal immigration law preempts state law where state law conflicts and creates "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").

The final allegation in the CHIPS petition is that C.M.K. is a child "whose behavior, condition, or environment is such as to be injurious or dangerous to [him]." Minn.Stat. § 260.015, subd. 2a(9). To support this claim, the Wiles allege that C.M.K. will be subject to imprisonment, fines, harassment, and physical assault if he is returned to China. Again, the Wiles are basing their claim on alleged circumstances in another country and, therefore, circumstances directly related to the immigration process. The record contains no alleged facts that demonstrate C.M.K.'s environment in the custody

of the INS and appellants is injurious or dangerous to him.

■ In sum, none of the allegations contained in the petition, even when assumed to be true, support the statutory grounds for finding C.M.K. in need of protection or services. *See In re Welfare of S.F.,* 482 N.W.2d 500, 502 (Minn.App.1992) (appellate court reviews de novo trial court's denial of motion to allow private attorney to file CHIPS petition; appellate courts assume facts supporting the petition are true). The juvenile court is without jurisdiction to enter a dispositional order when the facts would not establish that a child is in need of protection or services. *In re Welfare of T.L.L.,* 453 N.W.2d 355, 356–57 (Minn.App.1990). A finding that C.M.K. is in need of protection or services based on circumstances in China would directly conflict with the immigration proceedings and, thus, is preempted by federal law.

## DECISION

The juvenile court correctly determined that it lacked jurisdiction to grant leave to file a CHIPS petition, because federal immigration proceedings preempted state court proceedings where the sole basis for the CHIPS petition was the child's fear of deportation and the circumstances awaiting the child in his country of origin.

**Affirmed.**