*181 OPINION OF THE COURT
Carol S. Klein, J.
This court has an unusual and somewhat novel application before it. The above named minor, Zaim R, has filed a motion seeking an order of this court which makes a finding that he is eligible for long-term foster care due to abuse, neglect and/or abandonment. Such a finding is needed so that Zaim can obtain special immigrant juvenile status (SIJS) from the Immigration and Naturalization Service (INS).
Zaim, who makes this application himself, is attempting to receive this special status so that he may remain in this country. Under federal law and corresponding regulations there are certain methods by which an unaccompanied juvenile who enters this country may be permitted to remain legally. One such method is to apply for special immigrant juvenile status. The process is delineated under 8 USC § 1153 (b) (4) and 8 CFR 204.11. Generally speaking one might apply for this status when he or she has entered the country illegally or “without inspection” to which it is commonly referred.
Under section 203 (b) (4) of the Immigration and Nationality Act (8 USC § 1153 [b] [4]), an immigrant may be granted SIJS when: (1) the juvenile has been declared dependent on a juvenile court located in the United States or whom such court has legally committed to, or placed under the custody of, an agency or department of a state and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment; (2) it has been decided in administrative or judicial proceedings that it would not be in the alien’s best interest to be returned to his or her country or parent’s previous country of nationality; and (3) the Attorney General expressly consents to the dependency order servicing as a precondition to the grant of special immigrant juvenile status, except that no juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to the jurisdiction.
Zaim (represented by James D. Christo, Esq., Christo & Associates, EC., 321 Broadway, 3rd Floor, New York, New York 10007) asks this court to make the specified findings of dependency and neglect, abuse or abandonment by his family rendering him eligible for long-term foster care. Zaim asserts that based upon this court’s prior assumption of jurisdiction in *182 a guardianship proceeding naming Zaim’s great uncle as his guardian, in September of 2005, this court must proceed. In September of 2005, this court did issue an order appointing Naim Miftari as guardian of the person Zaim R, who was alleged to have been born in 1988 in the country of Albania. The guardianship petition alleged that guardianship of Zaim was necessary because the boy’s parents were not in this country.
In his current application, Zaim R. states that he entered into this country illegally in April of 2004. He recites a fantastic journey encountered by a young boy of 15 years old who was “thrown out” of his family home in the country of Albania. It is alleged that his parents did not stop Zaim from making a grueling journey from Albania to the United States (with the assistance of a stranger [smuggler]). The failure to prevent this journey is what now makes the boy’s parents neglectful or guilty of having abandoned their son. Zaim’s counsel avers that the minor made his way to Mexico where he was able to “surreptitiously find his way through the border of Mexico into the United States.” He was apparently apprehended at the border, detained and then released to a great uncle who resides in the City of Port Jervis, Orange County, State of New York. Zaim’s great uncle ultimately sought an order of guardianship over the person of Zaim in July of 2005.
Based upon the story as recounted by Zaim and his counsel, they request that this court conduct a further hearing to find that the infant’s Albanian family has abandoned and neglected him, thereby warranting this court’s intervention which will enable his ultimate safe haven and prevention of removal from this country. Petitioner claims that he wishes to remain in the United States, obtain a Social Security number, obtain financial aid, attend school and obtain employment.
This instant proceeding provides this court with a number of difficult issues. On the one hand the statement of facts as submitted by Zaim are quite tragic if truthful and accurate. On the other, this court is quite certain it is without authority to proceed as requested at this late time. Certainly, the very issue of the illegal immigration of foreign nationals into this country is a controversial and evolving concern at this time. This court further notes (coincidentally) that this very issue — of gaining special immigrant juvenile status — was the subject of a New York Law Journal article on the date this court’s decision was rendered.
Petitioner recites numerous federal provisions upon which he wishes this court to rely. However, this court finds the citations *183 provided unconvincing for the purposes sought here. This court finds that the relief sought by petitioner is outside the scope of its authority and is unwilling to take actions which are in contravention of federal jurisdiction and laws.
The Family Court is a court of limited jurisdiction, driven mainly by statute. That which is not specifically authorized by the Family Court Act is not permitted. Moreover, this court’s research has revealed no cases whereby prevention of deportation is within its authority. Certainly the making of special findings is permitted and within this court’s province, but this court understands those applications must be made prior to removal proceedings or other federal proceedings having been commenced. The underlying removal proceedings pending against the minor preclude this court from having jurisdiction to proceed at this late date.
Petitioner argues that this court’s original assumption of jurisdiction over the child for appointment of guardianship purposes gives it authority to act now. This court’s initial authority stemmed from Family Court Act § 661 which states:
“The family court has like jurisdiction and authority as is now conferred on county and surrogates courts as concerns the guardianship of the person of a minor. The provisions of the surrogate’s court procedure act shall apply to the extent they are applicable to guardianship of the person of a minor and do not conflict with the specific provisions of the act.”
The provision of the Surrogate’s Court Procedure Act to which that provision applies falls under article 17 (SCPA 1701 et seq.). The court is empowered to appoint a guardian of the person (only) of an infant whether or not the parent or parents of the infant are living. (SCPA 1701.) The section permits the court to appoint someone other than the infant’s parent as guardian. Generally speaking, the test to be applied in rendering such an appointment is the best interest test but only after a threshold finding of “abandonment, unfitness, persistent neglect [by the parent] or other extraordinary circumstances” (see, Matter of Merritt v Way, 85 AD2d 666, 667 [2d Dept 1981]; Matter of Bennett v Jeffreys, 40 NY2d 543 [1976]).
In a guardianship proceeding the statute mandates (in addition to the sworn statements in the petition) at least two and possibly three additional steps the court shall take. (SCPA 1706.) Upon the return of process, (1) the court shall ascertain the age *184 of the infant; (2) if the infant is over the age of 14 years, the court shall ascertain his preference for a suitable guardian; and (3) the court shall inquire of the Department of Social Services and the Department shall inform the court whether a person nominated to be guardian of such infant, or any individual 18 years or older who resides in the home of the proposed guardian, is a subject of an indicated report. Accordingly, the court must have adequate proof of the child’s age (birth certificate must be provided); the child over 14 must state his preference to the court, meaning the court must appoint a law guardian to represent the infant’s interest or have the infant appear in court and state his or her preference if of suitable age; and an “abuse and neglect” investigation must be done and provided to the court.
First and foremost, this court is without the benefit of all three of these mandates. The underlying guardianship order was one entered upon the consent of the minor’s parents. This court made no findings of abuse/neglect or abandonment. Nor was a best interest hearing conducted. No law guardian was assigned to represent Zaim, and no investigation by the local Department of Social Services was performed or provided. Assuming, arguendo, that the Family Court had jurisdiction to proceed at this point, this court would first need to vacate its underlying guardianship order entered upon consent and begin that proceeding again notwithstanding the consents filed by the boy’s parents. Doing so, however, would not cure the fact that the removal proceeding was commenced prior to this court’s assumption of jurisdiction in September of 2005.
It is also noteworthy that the underlying guardianship petition does not allege neglect/abuse or abandonment of the child by the parents, nor does it notify this court of the illegal and difficult sojourn the child undertook to arrive in this country. This court was led to believe that the underlying guardianship proceeding was one initiated upon the consent of the child’s parents so that he may have adult supervision while in this country.
Now, Zaim, the infant minor, asserts that he needs to attain special immigrant juvenile status under 8 CFR 204.11 to defeat potential removal from this country. As described above, special immigrant juvenile status means that an infant has been found to be eligible for long-term foster care by a juvenile court. A juvenile court is defined as a court located in the United States having jurisdiction under state law to make judicial determina *185 tions about the custody and care of juveniles. Clearly, this court falls within that definition.
However, the regulation further provides that a child who is eligible for long-term foster care will normally be expected to remain in foster care until reaching the age of majority, unless the child is adopted or placed in a guardianship situation. This particular child has not been placed in foster care, nor is it likely that he will as there are no charges that he is being neglected or abused by his guardian or anyone for that matter. Moreover, this court interprets the “guardianship situation” language in that provision as referring to those situations outlined in Social Services Law §§ 383-c and 384. None of the findings delineated in those statutes have been made in this case.
That being said, this court is unwilling to proceed any further in connection with the additional matters being presented. That is due in large part to the fact that this court is without the jurisdictional authority to proceed as requested.
Zaim seeks this court’s help in bolstering his case for SIJS to avoid removal from this country. He recites a horrific account of what his life was or would be in Albania. The contents of this file reveal, however, that on July 12, 2005, petitioner’s counsel was notified by the immigration court in New York that a hearing on removal proceedings was scheduled for July 26, 2005. Six days later on July 18, 2005, a petition was filed in Orange County Family Court by Naim Miftari seeking an order appointing him guardian of the person of Zaim.
Zaim now states in his current application to this court that he has been residing with his great uncle/now guardian since April 12, 2004. No applications were made to this court to take action on behalf of this minor until one year and three months after his arrival in this country and after removal proceedings had already commenced. This court’s research into this proceeding and the issues presented reveal that any orders issued by this court would be rendered a nullity, since the proceedings were commenced after federal immigration proceedings had already begun.
This court relies on three similar cases in making its determination. Two cases involve a state court unwilling to act, knowing its jurisdiction is superceded by the federal immigration proceedings pending; and the third case involves a federal court declaring the state court’s prior order a nullity.
*186 In Matter of C.M.K. (552 NW2d 768 [Minn 1996]), the Court of Appeals of the State of Minnesota upheld a trial level (state) court’s finding that it did not have jurisdiction to proceed in a proceeding similar to the one at bar. In C.M.K. the minor child had been born in the People’s Republic of China. Because of a savage attack on the boy’s father by the village and local government officials, he left his village in 1994. C.M.K. met with smugglers to pursue an opportunity to travel to the United States. He arrived in the United States and traveled by refrigerated truck to a home. The smugglers severely beat C.M.K. upon his arrival because he was unable to pay them money they demanded for transporting him. Ultimately C.M.K. was located by INS and arrested. After his arrest and because he was a juvenile, C.M.K. was released by the INS to the Lutheran Social Services of Minnesota where he was then placed in a foster home. C.M.K. was served by the INS with an order to show cause charging him with “deportability as an impending immigrant not in possession of a valid immigrant visa” in April of 1994. Political asylum was denied and the immigration court found C.M.K. deport-able. Subsequent to those proceedings, C.M.K.’s foster family filed a petition in the state juvenile court seeking a finding that C.M.K. is in need of long-term foster care which would permit him to obtain SUS. The court issued a ruling, after a hearing finding that it had no jurisdiction to proceed. On appeal, the court upheld the juvenile court’s finding agreeing with the court’s determination that “federal immigration proceedings preempted state court proceedings and, therefore, the state was without jurisdiction to find C.M.K. dependent” (at 770). The court further determined that the factual and statutory basis upon which the foster parents allege C.M.K. to be in need of state court protection or services demonstrate that state court action here would be in direct conflict with the deportation proceedings.
This same principle was applied by the United States District Court of the Western District of Michigan in Zhen-Hua Gao v Jenifer (991 F Supp 887 [1997]). In Gao, the minor Zhen-Hua Gao entered the United States without inspection. Gao, also born in the People’s Republic of China, was arrested and charged with deportability under section 241 (a) (1) (B) of the Immigration and Nationality Act (8 USC § 1277 [a] [1] [B]). He was detained by INS and, because he was an unaccompanied juvenile, placed in the physical custody of the *187 local social services department (LSSD). A case worker with the LSSD petitioned for temporary wardship of the child and the juvenile (probate) court determined him to be eligible for long-term foster care and that it was not in his best interest to be returned to his country. Gao was placed with a foster family pursuant to the juvenile court’s order. Gao was denied SIJS by the immigration court because the declaration of dependency issued by the Michigan probate court that Gao relied on to establish his eligibility was preempted by federal law and therefore without legal effect. The court determined that where a juvenile is already in the legal custody of the INS and is the subject of deportation proceedings, the state juvenile court lacks jurisdiction to subsequently find that the child is in need of protection.
The principles expounded in both Gao and C.M.K. were again relied upon in the more noted case involving Elian Gonzalez.* The Florida Circuit Court, in In re Gonzalez (2000 WL 492102 [2000]), addressed the state court’s lack of subject matter jurisdiction in instances where immigration is involved. Moreover, the state court, which was being asked to enter a custody order under its state custody statute, stated in relevant part,
“This court cannot second guess the INS. In the end, a determination by this court as to who should have custody of Elian Gonzalez would not prevent his deportation to Cuba and his father, because deportation is exclusively the province of the federal government. ‘Custody is not a statutory factor in determining deportability.’ ” (Gonzalez at *6, quoting Johns v Department of Justice of U.S., 653 F2d 884, 894 [5th Cir 1981].)
In its final analysis, the court recognized the difficult issue facing the future of the child but stated: “A black robe is not a license for a judge to intervene in many of society’s tragedies. The most difficult aspect of being a judge is watching horrible situations unfold and knowing that despite the awesome power of the judiciary, you are powerless to intervene” (at *11).
*188 The three cases outlined above, Gao, C.M.K. and Gonzalez, represent similar fact patterns to the instant case. There has been a prior order issued by this court awarding Naim Miftari guardianship over the person of Zaim. But there has been no finding by this court that the child is eligible for foster care or that he is dependent upon this court. This court has not made a determination nor was any proof provided to this court in the past that Zaim was a victim of neglect, abuse or abandonment. Naim Miftari submitted a notarized document to this court asserting the parents’ consent to Zaim residing with his great uncle. The guardianship order sanctioned that arrangement. From what this court can see, Zaim is safe and well cared for in the home of a relative here in New York State. This court’s services are not needed other than to attempt to defeat removal proceedings under immigration laws. The Family Court is not a vehicle by which one defeats deportation or impedes federal immigration laws. The Family Court serves the community to protect and preserve the health and welfare of children who fall under its jurisdiction. Family Court’s jurisdiction kicks in under specifically defined circumstances set forth in the Family Court Act. (Cf., Schepard and Liebmann, Law and Children, Undocumented Youth: Gaining Special Immigrant Juvenile Status, NYLJ, June 19, 2006, at 3, col 1.) The findings Zaim wishes this court to make are generally made in the context of a Family Court Act article 10 proceeding involving allegations of neglect or abuse by a parent or guardian against a child. That has not occurred and this court should not be relied upon now to make such findings simply to fill a gap in Zaim’s defense to his removal. It would be incumbent upon the immigration court at this point to make the findings Zaim seeks as they are findings made under federal legislation. This court is of the belief that the intervening removal proceedings preclude this court from having jurisdiction to adjudicate the status of this child.
Under the circumstances in this case, it is clear to this court that (1) the court is without jurisdiction to proceed, and (2) that the application is being brought in an effort to avoid removal. This court’s reading of the federal statutes (8 USC § 1153 [b] [4]) and corresponding regulations makes it clear that the finding of “dependency upon this court” must be made first and not as an end run to defeat removal. And while this court’s declination of jurisdiction or finding of its lack of subject matter *189 jurisdiction may result in an unfortunate situation for the child, it is outside this court’s province to intervene in “many of society’s tragedies.”
Accordingly, this court is declining to sign the order to show cause and the application is dismissed. Now, therefore, upon review and consideration it is hereby ordered that the petition is dismissed and this court declines to sign the order to show cause.

 Elian Gonzalez was the young boy who fled the island of Cuba in a small boat in November of 1999, with his mother and 12 other people, to reach the shores of this country in the state of Florida. The child’s mother perished along with most of the other passengers. Elian survived and became the subject of emotional, national custodial disputes between the child’s father in Cuba and the child’s relatives here in the United States.