Matter of Vanessa D. (2007 NY Slip Op 27112)

Matter of Vanessa D.

2007 NY Slip Op 27112 [15 Misc 3d 819]

March 14, 2007

Hepner, J.

Family Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, June 20, 2007

[*1]
In the Matter of the Guardianship of Vanessa D.
Family Court, Kings County, March 14, 2007

APPEARANCES OF COUNSEL

Door Legal Services Center, New York City (Hannah Leshaw of counsel), for Vanessa D.

OPINION OF THE COURT

Paula J. Hepner, J.
Before the court is a motion to have Vanessa D. declared a "special immigrant" under the Immigration and Nationality Act (8 USC § 1101 [a] [27] [J]). For the reasons set forth below the motion is denied.
Vanessa D. was born in 1989. In August 2004, it is alleged that this child was brought to the United States by her father and began living with her mother. Thereafter the father returned to Haiti where he died in January 2005. In February 2006, the mother left Vanessa with the petitioner, a long-time friend of hers, and returned to Haiti where she died in May 2006. The petitioner has cared for the child without financial assistance from the state, friends or relatives since February 2006. Nineteen days before Vanessa's 18th birthday, the petitioner filed for guardianship and an attorney from the Door Legal Services Center appeared as independent counsel for Vanessa pursuant to section 249 (a) of the Family Court Act. When counsel's oral [*2]motion to have the court make the findings necessary to declare the child a "special immigrant" was denied, Vanessa's attorney filed the written motion and memorandum of law presently before the court.
In 1990 the federal government enacted legislation as part of the Immigration and Nationality Act to give undocumented children under the jurisdiction of a juvenile court the ability to petition for "special juvenile immigrant status" and obtain permanent legal residence in the United States. Under 8 USC § 1101 (a) (27) (J) (i) and (ii), a "special immigrant" is an immigrant who "has been declared dependent on a juvenile court" and "deemed eligible . . . for long-term foster care" and for whom a judicial determination has been made "that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." Even if this court were able to make the requested findings, it could not because the pleadings are insufficient since the guardianship petition filed in this case contains no allegations to support the third element required to satisfy the definition of "special immigrant."
Under the federal regulations promulgated to implement the federal statute, a child is eligible for classification as a "special immigrant" when she/he has been "declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency" (8 CFR 204.11 [c] [3] [emphasis added]). The definition of "dependent" varies from state to state as the regulations recognize. Section 371 (7) of the Social Services Law defines a "dependent child" as a "child who is in the custody of, or wholly or partly maintained by an authorized agency or an institution, society or other organization of charitable, eleemosynary, correctional, or reformatory character." An "abandoned child" is defined in section 371 (2) of the Social Services Law as a "child under the age of eighteen years who is abandoned by both parents . . . in accordance with the definition and other criteria set forth in subdivision five of section three hundred eighty-four-b." Under section 371 (3) (a) of the Social Services Law, a "destitute child" is a "child who, through no neglect on the part of its parent, guardian or custodian is . . . destitute or homeless."
Under New York law, a declaration of dependency can be made in one of three proceedings: in a child protective proceeding under article 10 of the Family Court Act, in a surrender proceeding as a destitute or abandoned child under sections 358-a and 384 of the Social Services Law, or in an adoption proceeding pursuant to article 7 of the Domestic Relations Law. Were Vanessa the subject of any of these proceedings, the facts of her case would establish she is dependent, abandoned and destitute. Absent an adjudication under these provisions of the Family Court Act, Vanessa cannot be considered a "dependent" child nor is she "dependent upon a juvenile court." When counsel's oral motion for "special immigrant status" was denied on February 27, 2007 the court informed her that, pursuant to section 1032 (b) of the Family Court Act, the undersigned would authorize her, as the child's attorney, to file a neglect petition on behalf of her client so there would be a proceeding before the court in which the requested findings could be made.[FN1]

When time was of the essence, counsel chose to file a written motion [*3]for the same relief that already had been denied.
The Family Court is a court of limited jurisdiction. Its authority in guardianship proceedings under article 6 of the Family Court Act derives from article 17 of the Surrogate's Court Procedure Act. Neither a declaration of "dependency," as that term is defined in the Social Services Law, nor any of the other declarations required by the definition of "special immigrant" are made in the context of a guardianship proceeding under New York law (Matter of Zaim R., 13 Misc 3d 180 [Fam Ct, Orange County 2006]). In Zaim R. the child's great uncle was awarded letters of guardianship in 2005. One year later, Zaim's attorney filed a motion to have the child declared a "special immigrant." The Family Court held it was "without the jurisdictional authority to proceed as requested" (Zaim R., 13 Misc 3d at 185). Judge Klein's decision in Zaim R. references three other opinions from courts in Minnesota, Michigan and Florida finding that the juvenile and probate courts, under their state statutes, lacked subject matter jurisdiction to grant this type of relief. The standard for adjudication in guardianship cases, as set forth in section 1707 (1) of the Surrogate's Court Procedure Act, is whether the "interests of the infant will be promoted by the appointment of a guardian," and courts generally perform a Bennett v Jeffreys analysis[FN2]

before reaching the question of best interests. When a court finds that because of parental abandonment the interests of the child will be promoted by the appointment of a guardian, the adjudication does not result in a determination that the minor is a "dependent child" or that she/he "is dependent upon the juvenile court." Accordingly, under New York law, a guardianship proceeding is not the proper vehicle for seeking this relief.
The administrative appeal in Matter of Menjivar (29 Immigr L & Pro Rptr B2-37 [1994]) from Texas, cited by Vanessa's attorney in support of her motion, is not binding on this court nor is it determinative of the issues herein. In that matter the District Director of the Immigration and Naturalization Service determined the minor had not been declared dependent on a juvenile court and therefore was not eligible to petition for "special juvenile immigrant status" because the Texas court had appointed the child's uncle as his "managing conservator." The court's decree specifically stated that "it was not in the beneficiary's best interest to return to his native country of El Salvador" and the record contained an affidavit from one of the attorneys who drafted the Texas Family Code which stated that "when a family court decree designates a nonparent as a managing conservator over a minor child whose parents have relinquished their parental rights, this situation is analogous to that described by the term 'dependent on a juvenile court.' " On these facts and under the Texas Family Code,[FN3]

the District Director's determination was not upheld on appeal because it was contrary to the express provisions of the federal [*4]regulations.[FN4]

Inasmuch as the parental rights to Vanessa have not been supplanted in a court proceeding, and the statutory scheme in New York differs substantially from the Texas Family Code, this administrative determination is not pertinent.

Footnotes

Footnote 1: Alternatively, the court noted that upon appointment as the child's legal guardian, the petitioner would be authorized to file a proceeding pursuant to section 384 (1) (d) of the Social Services Law. Unfortunately, because the guardianship could not be finalized before the child's 18th birthday since the statutory requirements for fingerprints, a child abuse registry clearance and a child welfare investigation could not be completed before then, this option is not available in this case.

Footnote 2: In Matter of Bennett v Jeffreys (40 NY2d 543, 548 [1976]) the Court of Appeals held that a fit parent cannot be deprived of his or her right to custody "because someone else could do a 'better job' of raising the child in the view of the court (or the Legislature), so long as the parent or parents have not forfeited their 'rights' by surrender, abandonment, unfitness, persisting neglect or other extraordinary circumstance."

Footnote 3: Texas Family Code Annotated chapter 153 (Vernon 2003) provides for the reallocation of parental rights and responsibilities because of divorce or other reasons. A third party may be appointed as a sole managing conservator pursuant to Texas Family Code Annotated § 153.371 (Vernon 2003) to exercise the rights and powers formerly belonging to the child's parents.

Footnote 4: The regulations (8 CFR 204.11 [a]) promulgated to implement the special immigrant juvenile provisions of the Immigration and Nationality Act provide that "for the purposes of establishing and maintaining eligibility for classification as a special immigrant juvenile, a child who has been adopted or placed in guardianship situation after having been found dependent upon a juvenile court in the United States will continue to be considered to be eligible for long-term foster care."