**In the Matter of the CIVIL COMMITMENT OF Hayden Michael RICHARDS.**

**No. A07–671.**

Court of Appeals of Minnesota.

Sept. 4, 2007.

David Essling, St. Paul, MN, for appellant Hayden Michael Richards.

Susan Gaertner, Ramsey County Attorney, Melinda S. Elledge, Assistant County Attorney, St. Paul, MN, Margaret G. Sa-

mec, Hugo, MN, for respondent Ramsey County.

Considered and decided by HUDSON, Presiding Judge; LANSING, Judge; and WILLIS, Judge.

## OPINION

WILLIS, Judge.

Appellant challenges his civil commitment as a sexually dangerous person and a sexual-psychopathic personality, arguing that the fact that he is subject to a federal deportation order both deprives the state court of jurisdiction and makes him an "improper candidate" for civil commitment. We affirm.

## FACTS

On August 3, 2006, the district court committed appellant Hayden Michael Richards to the Minnesota Sex Offender Program (MSOP) as a sexual-psychopathic personality (SPP) and a sexually dangerous person (SDP). And after a 60–day–review hearing, the district court ordered that Richards be indeterminately committed to MSOP. Richards is a citizen of Trinidad and has been ordered deported by the U.S. Department of Immigration and Homeland Security (DIHS).

Richards does not challenge on appeal the district court's determination that he is an SPP and an SDP under the civil-commitment statute, Minn.Stat. ch. 253B (2006). That determination was based on the district court's findings that between November 1995 and December 1996, Richards attacked and raped two women and attempted to rape two others.

On February 3, 2006, while Richards was incarcerated, respondent Ramsey County filed a petition for his civil commitment. Shortly thereafter, he was released from prison and taken into custody pending a determination of the commitment petition. The district court held an initial commitment hearing and ordered that Richards be committed. And after a 60–day–review hearing, the district court ordered that Richards be indeterminately committed. Richards appeals.

## ISSUES

I. Does a deportation order by the U.S. Department of Immigration and Homeland Security deprive a state court of jurisdiction in a civil-commitment proceeding?

II. Is a person who is subject to a federal deportation order unsuitable for civil commitment?

## ANALYSIS

On appeal, Richards does not challenge the district court's conclusion that he meets the statutory requirements for commitment as an SDP and an SPP. *See* Minn. Stat. § 253B.02, subds. 18b, 18c (2006) (defining "sexual psychopathic personality" and "sexually dangerous person"). Instead, he argues that the fact that he is subject to a deportation order both deprives the state court of jurisdiction to civilly commit him and makes him an "improper candidate" for civil commitment. Richards's arguments raise questions of law, which this court reviews de novo. *In re Civil Commitment of Stone*, 711 N.W.2d 831, 836 (Minn.App.2006), *review denied* (Minn. June 20, 2006).

In its indeterminate-commitment order, the district court noted:

The United States Department of Immigration and Homeland Security has issued an order for [Richards's] deportation and has placed a detainer on him at the MSOP. While [Richards] wishes to be deported rather than be civilly committed, this court has no jurisdiction over [Richards's] immigration status or deportation.

. . . .

While the Department of Immigration and Homeland Security maintains its detainer on [Richards], this court lacks any jurisdiction with regard to [Richards's] immigration status or deportation. [Richards's] immigration status does not affect or suspend enforcement of the civil commitment statutes. In addition, [Richards's] immigration status is not relevant to the court's conclusion that he meets the statutory requirements to be considered as a Sexual Psychopathic Personality and Sexually Dangerous Person under Minn.Stat. § 253B.02, Subd. 18b and 18c.

## I.

■ Richards argues that the district court's jurisdiction "is preempted by the deportation proceeding." Richards relies on *In re Welfare of C.M.K.*, 552 N.W.2d 768 (Minn.App.1996), which he asserts "holds that a federal deportation proceeding preempts state court jurisdiction in a state juvenile court proceeding." He adds that "[t]here is no discernible reason for distinguishing a state juvenile proceeding from a state court civil commitment proceeding with regard to the preemption issue."

The county accurately distinguishes the facts of *C.M.K.* from those here. In *C.M.K.*, this court held that the state juvenile court "correctly determined that it lacked jurisdiction to grant leave to file a CHIPS petition, because federal immigration proceedings preempted state court proceedings where the sole basis for the CHIPS petition was the child's fear of deportation and the circumstances awaiting the child in his country of origin." 552 N.W.2d at 771. *C.M.K.* is based on this court's determination that the state CHIPS proceeding would directly conflict with the deportation proceeding. *Id.*

Here, the county argues, Richards's civil commitment does not prevent enforcement of his order of deportation, so there is no direct conflict. Richards asserts that his indefinite commitment directly conflicts with his deportation to Trinidad. We agree with the county. DIHS may deport Richards at any time, regardless of his commitment.

Richards further argues that because "[t]here is no general grant of discretion in the federal law whereby Homeland Security can avoid the mandates" of 8 U.S.C. § 1231 (2000), which "requires removal within 90 days of the deportation order with some limited exceptions not applicable here," the department's apparent deferral of his removal to Trinidad does not confer jurisdiction on the state district court. Rather, Richards argues, the U.S. Attorney General must comply with section 1231 and deport him. The county replies that although DIHS may deport Richards "at any time" while he is civilly committed, "neither Appellant, Respondent, nor the state court has the authority to make [DIHS] execute the deportation order." The county is correct.

Further, *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), states that at any stage of a deportation proceeding, "the Executive has discretion to abandon the endeavor . . . for humanitarian reasons or simply for its own convenience." *Id.* at 483–84, 119 S.Ct. at 943. Richards cites several cases for the proposition that federal courts "have required the Attorney General to comply with the mandates of the statute" and remove a person against whom a deportation order has been issued within 90 days after the order. But in all of the cases cited, the DIHS (or its equivalent—the INS, for example) initiated deportation proceedings and then held the petitioner in federal custody or in prison in

post-removal-period detention for more than 90 days. *See Zadvydas v. Davis,* 533 U.S. 678, 682, 121 S.Ct. 2491, 2495, 150 L.Ed.2d 653 (2001); *Thai v. Ashcroft,* 366 F.3d 790, 792–93 (9th Cir.2004); *Tran v. Gonzales,* 411 F.Supp.2d 658, 661 (W.D.La. 2006). Here, DIHS deferred the deportation proceeding and allowed Richards to remain civilly committed, not imprisoned, which does not violate the 90–day limit on post-removal-period detention imposed by 8 U.S.C. § 1231.

Even if DIHS is required to deport Richards, which under Reno, it perhaps is not required to do, neither the district court nor this court is able to compel that action. And because Richards's civil commitment does not conflict with any enforcement of the deportation order that DIHS elects to initiate, there is no conflict with federal law. The district court therefore has jurisdiction to civilly commit Richards under state law.

## II.

■ Richards's second argument is that even if the deportation order does not deprive the state court of jurisdiction here, he is not a "proper candidate" for civil commitment. Richards claims that the goal of the civil-commitment statutes is to provide treatment followed by eventual release into the community and argues that because he "cannot participate in the transition phase or be eventually released to the community (other than Trinidad) because of his deportee status," his civil commitment is improper. As we noted earlier, Richards does not challenge on appeal the finding that he is an SDP and an SPP-that is, that he meets the statutory criteria for commitment under the civil-commitment statute. *See* Minn.Stat. § 253B.02, subds. 18b, 18c. In fact, he "has offered to enter in to a stay of commitment providing for his commitment if, for some unforeseeable

reason, he is not deported or returns to the U.S. after deportation."

The county argues that Richards's "potential deportation has absolutely no effect on the legal elements for civil commitment" and that because Richards undisputedly meets the statutory criteria and failed to establish by clear and convincing evidence that there is an appropriate, less-restrictive treatment program available to him, the district court was "mandated by statute to commit" him.

The county is correct that Minn.Stat. § 253B.185, subd. 1 (2006), provides that the district court "shall" commit an individual when the statutory requirements are met and when the individual fails to establish that a less-restrictive treatment option meets his needs and the needs of the community. Unless and until Richards is deported-an action that neither the district court nor this court is able to compel-the state must continue to address his need for treatment. And contrary to Richards's argument, until he is deported, he will be able potentially "to participate in the transition phase" and "be eventually released to the community."

## DECISION

A federal deportation order does not deprive the district court of jurisdiction to civilly commit Richards under Minn.Stat. § 253B.185. And the fact that Richards may be deported by the Department of Immigration and Homeland Security in the future does not make him an improper candidate for civil commitment.

**Affirmed.**