# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2780-18T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
M.A., SVP-626-11.

_____

Submitted March 24, 2020 – Decided April 15, 2020

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-626-11.

Law Offices of Alan L. Zegas, attorneys for appellant (Alan L. Zegas and Joshua M. Nahum, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, Deputy Attorney General, on the brief).

PER CURIAM

In 2009, M.A. was convicted of sexually assaulting, N.J.S.A. 2C:14-2(b), a six-year-old boy at a rest stop on a New Jersey highway, and sentenced to a three-year prison term subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. The court also imposed parole supervision for life. As M.A.'s prison term neared

its end, the State petitioned for his commitment to the Special Treatment Unit (STU), pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.35. The trial court entered a judgment requiring M.A.'s commitment and has continued to the present day his commitment as the result of numerous subsequent review hearings.

M.A., who is now forty-two years old, claims he was, until his incarceration, a Maine resident and that he had never resided in New Jersey. In fact, it appears that his crime occurred during a trip through this State while on his way from Pennsylvania to New York. M.A. also alleges that, as his term of incarceration in state prison neared its end, application was made to Maine officials to obtain their commitment to overseeing M.A.'s parole supervision for life.

In light of these circumstances, M.A. argues that the latest order continuing his commitment under the SVPA, entered on January 16, 2019, should be reversed. In a single, multi-faceted point, M.A. argues that the trial judge "failed to properly apply the civil commitment standard by failing to determine whether it is highly likely that any re-offense would occur in or impact New Jersey." In short, M.A. argues that it is not enough that the State

A-2780-18T5

prove that he is highly likely to reoffend; the State must also show that it is highly likely that he will reoffend "in New Jersey." We disagree and affirm.

A criminal defendant, who has been convicted of a predicate offense – as was M.A. – may be involuntarily committed under the SVPA when found to be suffering from "a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26. Annual review hearings are required to determine the need for continued commitment. N.J.S.A. 30:4-27.35; N.J.S.A. 30:4-27.32(a).

To warrant commitment, or the continuation of commitment, the State must prove that "the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." In re Commitment of W.Z., 173 N.J. 109, 132 (2002); see also In re Commitment of G.G.N., 372 N.J. Super. 42, 46-47 (App. Div. 2004). In that setting, the trial court must address the individual's "present serious difficulty with control over dangerous sexual behavior," and the State must establish "by clear and convincing evidence . . . that it is highly likely that the person . . . will reoffend." W.Z., 173 N.J. at 132-

34; see also In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 611 (App. Div. 2003).

The State met its burden here. The trial judge heard testimony from a psychiatrist and a psychologist during the January 15, 2019 hearing. M.A. did not testify or provide evidence.

The record reveals that M.A. has acknowledged that his predation on children began when he was thirteen years old. Before long, he was preying on children daily; this conduct became a "central, secret, focus of his life." M.A. has in the past admitted to hundreds of what he referred to as "brush by" incidents where he would physically brush up against children, as though by accident, so he could rub his hands against their genitals or buttocks. His victims ranged from ages four to sixteen, but M.A. admitted his greatest arousal is to boys ages ten to thirteen. Among his other admissions about more significant predatory conduct that need not be described here, M.A. has acknowledged downloading, possessing, viewing and trading "thousands" of pictures and videos of child pornography.

Testimony elicited from the State's experts revealed that while M.A. initially engaged in treatment at the STU, he had, over the last couple of years, withdrawn from participation. He also continues "to minimize his offenses" and

A-2780-18T5

has failed to do "some basic things" to prevent relapse. For example, M.A. continues to claim – as he did in 2009 – that "he can continue to have a fantasy world that involves sex with children in his own mind and masturbate to those [images] without acting out on them despite the fact that his whole life was focused around acting on it." Both experts provided compelling testimony – evidence the judge found clear and convincing – that M.A. is highly likely to reoffend. The judge's findings were "substantially influenced by [the] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161-62 (1964)). And, so, our standard of review is narrow; we defer to the trial judge's findings because they are supported by evidence in the record. In those circumstances, we "reverse only for a clear abuse of discretion." In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 493 (App. Div. 2005); see also In re Civil Commitment of V.A., 357 N.J. Super. 55, 63 (App. Div. 2003); In re Civil Commitment of J.P., 339 N.J. Super. 443, 459 (App. Div. 2001).

After carefully reviewing the record on appeal, we find no abuse of discretion and no reason to second-guess the judge's fact findings. Instead, we conclude that all the judge's findings are supported by testimony he was entitled

to credit, that these findings are worthy of our deference, and that the judge did not abuse his discretion in continuing M.A's commitment under the SVPA.

Indeed, we do not view M.A.'s arguments as questioning the judge's findings in this regard. Instead, M.A. argues that the State should have been required to additionally prove a likelihood of re-offense "specific to the State of New Jersey." M.A. contends that a state's power to civilly commit offenders comes from its "parens patriae powers to protect its citizens" (emphasis added), and, from this, he argues that the power to commit does not turn just on a high likelihood to reoffend but is "limited to the jurisdiction of the state."

The SVPA has broader application than suggested by M.A.'s argument. New Jersey's power to commit is not limited to its citizens or its borders. In fact, the predicate act that the State must prove need not have occurred in New Jersey. N.J.S.A. 30:4-27.26(a) (defining "sexually violent offense" as, among other things, "a criminal offense with substantially the same elements as any offense . . . entered or imposed under the laws of the United States, this State or another state" (emphasis added)); In re Commitment of R.Z.B., 392 N.J. Super. 22, 44 (App. Div. 2007) (recognizing that "cognate offenses in another state readily satisfy the SVPA"). And, the person the State seeks to have committed need not reside or be domiciled in New Jersey. See N.J.S.A. 30:4-31 (declaring

that "[a] nonresident of this State may be committed to a mental hospital in this State in the same manner as residents may be admitted and committed").

It is enough that there be some nexus between this State and the offender or the predicate offense to allow application of the SVPA to a particular individual. We need not presently fix the lawful jurisdictional reach of the SVPA here because the predicate act that led to M.A.'s commitment was committed within our borders, thereby providing for New Jersey a legitimate interest that would satisfy any constitutional concerns about the SVPA's jurisdictional reach in this case. While it may be true that M.A. was not a New Jersey resident when he committed the predicate act, and while it may also be true that M.A. has no present intention to reside in New Jersey once released, the power to commit authorized by the SVPA is not limited to New Jersey residents. That the predicate act occurred here is enough to allow our courts to fairly and constitutionally commit or continue to commit a nonresident so long as the SVPA's requirements are met.

M.A., in fact, recognizes that "residency is not determinative of New Jersey's rights to pursue commitment under the SVPA," but he argues it should be a factor when a court considers "whether a reoffense is likely to cause a threat

7

to the public safety and health of those <u>in the state</u>" (emphasis added).[1]  To be sure, a committed person's proposed locale and living arrangements if released may have some bearing on a judge's determination when periodically reviewing the committed person's circumstances and the need for further commitment.  But we see nothing in the evidence adduced at the hearing that would support the finding urged by M.A. in this appeal.

Instead, M.A.'s arguments about territorial concerns were raised in the trial court by way of a motion denied on November 14, 2018, before the review hearing took place.  As noted, M.A. did not testify nor present evidence at the hearing, so no record was made at that hearing to support the legal arguments M.A. presents in this appeal.  Moreover, M.A.'s notice of appeal identifies only the January 16, 2019 order that continued his commitment, not the November 14, 2018 order, which denied his motion to "terminate civil commitment," when the territorial argument was posed.  Even if we were to exercise our discretion to consider the argument despite M.A.'s decision not to seek review of the November 14, 2018 order, we observe that the trial judge denied that motion for

---

[1]  In support, M.A. cites to an unpublished opinion of this court, as well as <u>In re Civil Commitment of Richards</u>, 738 N.W.2d 397 (Minn. App. 2007), which considered the impact of deportation proceedings commenced against the committed individual.  In neither case did the court view that circumstance as posing a limitation on the court's power to commit.

reasons expressed in an oral decision, and M.A. has not included a transcript of that decision in the record on appeal. So, while we have rejected M.A.'s argument about the territorial reach of the SVPA and the contention that the State prove that M.A. be highly likely to reoffend "in this state" as if there were support for the factual premise on which M.A. bases these contentions, in fact the record on appeal is silent in that regard since M.A.'s plans upon release were not adduced at the hearing.

To the extent we have not addressed any other argument raised by M.A. in this appeal, it is because we find any such argument to have insufficient merit warranting discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2780-18T5